UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------

UNITED STATES OF AMERICA,

            Plaintiff-Respondent,

v.                    5:02-CV-1234

LARRY MILLER,

            Defendant-Movant.  5:97CR199(01)

------------------------------------

THOMAS J. McAVOY
United States District Judge

### DECISION and ORDER

I.    **INTRODUCTION**

Larry Miller moves pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence on the grounds that: (1) he received the ineffective assistance of counsel because his attorneys failed to raise an issue in the district court and on appeal concerning the evidentiary standard in determining whether he breached the plea agreement; (2) the plea agreement is unconscionable because it gives the government the sole authority and discretion to determine whether the plea agreement was breached; (3) the government breached the plea agreement by failing to advise the court of the nature and extent of his cooperation at or before sentencing; (4) he is actually innocent and/or he did not make a knowing and voluntary decision to enter into a plea agreement based on the definition of "proceeds" adopted by the Seventh Circuit Court of Appeals in United States v. Scialabba, 282 F.3d 475 (7th Cir.), cert. denied, 123 S. Ct. 671 (2002); (5) he received the

ineffective assistance of counsel because his attorney recommended that he enter into a plea stipulating that $79 million was the amount of money that should be forfeited to the government; (6) he received the ineffective assistance of counsel because his attorney recommended that he enter into a plea stipulating that $79 million was the value of the funds laundered; and (7) he received the ineffective assistance of counsel because his attorney failed to request a downward departure for substantial assistance under U.S.S.G. § 5K2.0.

II.     FACTS

The basic facts surrounding the conspiracy are set forth in the Second Circuit's opinion. United States v. Miller, 7 Fex. Appx. 59, 2001 WL 300536 (2d Cir.), cert. denied, 534 U.S. 874 (2001). Miller pleaded guilty to one count of participating in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). Miller was sentenced to 210 months imprisonment. His conviction was affirmed on appeal. Id.

III.    DISCUSSION

### a. Standard to be Applied in Reviewing a Breach of the Plea Agreement/Conscionability of the Plea Agreement

Miller first contends that his counsel was ineffective because he failed to raise the proper standard of proof required to demonstrate a breach of the plea agreement. According to Miller, this Court erroneously required the government to prove that it had a good faith belief that Miller breached the plea agreement (as opposed to requiring proof of a breach by a preponderance of the evidence) to relieve it of its obligation to move for a substantial assistance departure.

This argument must be rejected for several reasons. First, because the plea agreement did not obligate the government to move for a departure based on substantial assistance, it was not objectively unreasonable for Miller's counsel not to raise this issue.[1]

Second, even assuming *arguendo*, that counsel's conduct was deficient, the government was not seeking to nullify the plea agreement on the grounds that Miller violated the terms thereof, but, rather, merely used his non-fulfillment as one of its reasons for exercising its discretion not to move for a downward departure.

Third, a similar argument was addressed and rejected by the Second Circuit on appeal. See Miller, 2001 WL 300536 at *2.

Fourth, under the facts and circumstances of this case, this argument is unsupportable. See United States v. Saladino, 62 Fed. Appx. 386, 2003 WL 1798984 (2d Cir. 2003) (rejecting a similar argument); United States v. Brown, 321 F.3d 347, 354 (2d Cir. 2003); United States v. Rexach, 896 F.2d 710, 713 (2d Cir. 1990). The plain terms of the plea agreement provide that "[t]he United States may, but shall not be required to, make a motion [for substantial assistance]. . . . The decision to make a motion for a departure [for substantial assistance] . . . shall rest in the sole discretion of the United States Attorney. . . . The United States has made no promise, express, implied, or otherwise, that it will move for a departure based upon LARRY MILLER's 'substantial assistance.'" This provision is clear and unambiguous. The government's only obligation under the contract was to "advise the Court of any assistance provided by Larry Miller." The government did not contract to file a motion pursuant to U.S.S.G. § 5K1.1 and, thus, Miller has no basis upon which to complain

---

[1] The government's obligation under the plea agreement is discussed more fully *infra*.

about the government's failure to seek a downward departure for substantial assistance.[2] See Rexach, 896 F.2d at 713 ("[I]n the absence of a specific agreement, the decision by the prosecutor to forego a downward departure motion in a particular case is not subject to judicial review at all.").

Even if the government did agree to make a departure motion, the contract is not unconscionable because the government's discretion is tempered by the bad-faith standard. See id.[3] The Second Circuit has already held that there was evidence that the government did not act in bad faith. See Miller, 2001 WL 300536, at *2.[4] In any event, the government agreed to inform the Court of Miller's assistance, it informed the Court of Miller's assistance,[5] and the Court was fully aware of its ability to downwardly depart, but declined to do so.[6] See United States v. Braimah, 3 F.3d 609, 611 (2d Cir. 1993); Dec. 20, 1999 Tr. at 25.

Miller's argument that the plea agreement is illusory because the government retained discretion to move for a downward departure is frivolous. By entering into the plea

---

[2] Although the agreement does speak about a motion for substantial assistance, it imposes no obligation whatsoever upon the government to make such a motion and, thus, is as if the plea agreement never even mentioned the making of such a motion.

[3] Of course, the bad faith standard only applies when the government has explicitly agreed to make a substantial assistance motion, but then refuses to do so based upon its determination that the defendant has not, in fact, provided substantial assistance. Here, the government was under no obligation to file such a motion in the first instance.

[4] This same evidence is more than sufficient to find by a preponderance of the evidence that Miller breached the plea agreement.

[5] Miller claims that the government breached the agreement by failing to fully disclose the nature and extent of his cooperation. This argument is rejected for reasons to be discussed.

[6] Because the Court was aware of its ability to downwardly depart for substantial assistance, but declined to do so, Miller's claim that his counsel was ineffective for failure to make a substantial assistance motion must be rejected.

agreement, Miller did obtain a benefit, including having the other charges against him dropped.

### b. Whether the Government Breached the Plea Agreement

Miller next contends that the government breached the plea agreement by failing to disclose the nature and extent of his substantial assistance. The plea agreement obligated the government to inform the Court of any assistance provided by Miller. The record reveals that the government did disclose the nature and extent of Miller's assistance. In his papers, Miller does not identify any assistance that he provided that was not disclosed by the government. Accordingly, this claim must be rejected.

### c. Actual Innocence/Unknowing and Involuntary Guilty Plea

Next, Miller claims that he is actually innocent and that he unknowingly and involuntarily entered into the guilty plea. This claim is premised upon a Seventh Circuit decision holding that "proceeds" for purposes of the money laundering statute are net profits (as opposed to gross revenues or gross profits) of the criminal business. Scialabba, 282 F.3d 475; see also United States v. Genova, 333 F.3d 750, 760 (7th Cir. 2003). Miller claims that his conduct did not involve the use of net profits, but the reuse of the same capital to pay the expenses of the underlying criminal activity.

The Court rejects this argument because counsel's performance was not objectively deficient. In the somewhat similar context of the RICO laws, the Second Circuit rejected a claim that "proceeds" should be based on net profits. See United States v. Lizza Indus., Inc., 775 F.2d 492, 498 (2d Cir. 1985) (proceeds are gross profits ). The majority of Circuit Courts to have addressed the issue have held that "proceeds" include either gross

profits or gross receipts; not net profits.  See United States v. Simmons, 154 F.3d 765, 770-71 (8th Cir. 1998) (proceeds are gross receipts); United States v. DeFries, 129 F.3d 1293 (D.C. Cir. 1997) (rejecting Scialabba and noting that proceeds need not be net of taxes); United States v. McHan, 101 F.3d 1027, 1042 (4th Cir. 1996) (proceeds are gross revenues); United States v. Hurley, 63 F.3d 1, 21 (1st Cir. 1995); see also United States v. Iacaboni, 221 F. Supp.2d 104, 112 n.2 (D. Mass. 2002) (rejecting Scialabba); see also United States v. Szur, 289 F.3d 200, 213-14 (2d Cir. 2002).  In fact, it is arguable that, since Lizza Industries, the definition of proceeds has been expanded.  When Lizza Industries was decided, the Second Circuit did not have occasion to consider the then-recent amendment to the RICO statutes that specifically opted to use the word "proceeds" rather than "profits." See Lizza Industries, 775 F.2d at 497 n.3.  Since Lizza, the Second Circuit has said the word "proceeds" should be afforded its ordinary and customary meaning[7] and that "the funds . . . were the 'proceeds of some unlawful activity' the moment the defendant realized them." United States v. Monaco,194 F.3d 381, 385 (2d Cir. 1999) (citing United States v. Haun, 90 F.3d 1096, 1101 (6th Cir. 1996)); Szur, 289 F.3d at 213-14; Haun, 90 F.3d at 1101.  There is no basis for concluding that Congress intended a less expansive definition in the money laundering statute (which is a racketeering activity) than it did in the RICO forfeiture statute.  In light of the foregoing, it cannot be said that counsel's performance was objectively deficient.

---

[7] The word "proceeds" is defined as "that which results or accrues"; "the total sum derived from a sale or other transaction." Random House Dict. of the English Language at 1146-57 (1979). This is a broad enough definition to include gross revenues.

Moreover, in the plea agreement, Miller admitted that he "agreed with his co-conspirators that Canadian currency <u>from the black market sale of the cigarettes and liquor would be exchanged for U.S. currency or bank credit</u> in order to purchase bank drafts, cashier's checks, and to make interstate wire transfers in order to purchase additional cigarettes and liquor in order to promote the underlying wire fraud scheme." Pl. Agr. at 5. Currency from the sale of the cigarettes and liquor neatly fits within the common definition of "proceeds." Thus, contrary to Miller's current argument that he only reinvested the initial capital, he admitted using "proceeds" from the sale of the cigarettes and liquor.

        d.  **Whether Miller Received Ineffective Assistance of Counsel Because His Attorney Recommended that He Enter into a Plea Stipulating that $79 million Was the Amount of Money that Should be Forfeited to the Government and that $79 Million Was the Value of the Laundered Funds**

Miller next contends that his trial counsel erroneously advised him to enter into a plea agreement stipulating that $79 million was the amount of money that should be forfeited to the government and that $79 million was the value of the laundered funds. Miller contends that most of the money involved the reinvestment of the original capital. To the extent Miller is relying upon Scialabba, his argument is rejected for the reasons previously stated. To the extent Miller does not rely on Scialabba, his claim must fail because, as the Second Circuit recently held, "§ 2255 may not be used to bring collateral challenges addressed solely to noncustodial punishments like the one at issue here." Kaminski v. United States, --- F.3d ---, --- (2d Cir. 2003). Thus, although Miller couches his claim in terms of the ineffective assistance of counsel, because he is challenging his non-custodial

forfeiture order, this Court is without subject matter to entertain a collateral attack on that order pursuant to § 2255. Id. at n.1.

To the extent the value of the funds affected Miller's sentence and, thus, is properly before the Court on a § 2255 motion, it was not objectively unreasonable for counsel to believe that the amount subject to forfeiture was not limited to proceeds of the criminal activity, but extended to all property involved in the criminal activity. See United States v. Thompson, 837 F. Supp. 585, 586 (S.D.N.Y. 1993); see also United States v. McGauley, 279 F.3d 62, 75-76 (1st Cir. 2002); United States v. Baker, 227 F.3d 955, 970 n. 4 (7th Cir. 2000) (noting that "even legitimate funds that are commingled with illegitimate funds can be forfeited if the legitimate funds were somehow involved in the offense, such as by helping to conceal the illegal funds"), cert. denied, 531 U.S. 1151 (2001); United States v. Bornfield, 145 F.3d 1123, 1135 (10th Cir. 1998) ("Property 'involved in' an offense 'include[s] the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.'") (quoting United States v. Tencer, 107 F.3d 1120, 1134 (5th Cir. 1997)); McHan, 101 F.3d at 1042 (proceeds are gross revenues); United States v. Voigt, 89 F.3d 1050, 1086 (3d Cir. 1996) ("[T]he government must prove by a preponderance of the evidence that the property it seeks under § 982(a)(1) in satisfaction of the amount of criminal forfeiture to which it is entitled has some nexus to the property 'involved in' the money laundering offense."); see also discussion supra at III(C).

Section 982(a)(1) provides that "[t]he court . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property

traceable to such property." The use of the term "involved in" is extremely broad and can reasonably be interpreted to include more than the proceeds (whether defined as net profits or gross profits) of the criminal activity. See id. Notably, the statutory language of § 982(a)(1) is significantly broader than the language in § 1963 upon which Miller relies. Section 1963 speaks to the forfeiture of "property constituting, or derived from, any proceeds which the person obtained . . . from racketeering activity." The money laundering forfeiture statute, on the other hand, contains no such limitation that the property be derived from "proceeds." It applies to all property somehow involved in the offense.

The sentencing guidelines calculate the base offense level taking into consideration the "value of the laundered funds." U.S.S.G. § 2S1.1(a)(2). The phrase "laundered funds" is defined to mean "the property, funds, or monetary instruments <u>involved in</u> the transaction. . . ." (emphasis added). As with section 982(a)(1), the sentencing guidelines also use the broad phrase "involved in." See United States v. Martin, 320 F.3d 1223, 1225-26 (11th Cir. 2003). Thus, it was not objectively unreasonable for counsel to believe that the value of the funds included the $79 million.

## IV. CERTIFICATE OF APPEALABILITY

Inasmuch as Miller presents no viable issues upon which reasonable jurists could debate whether: (a) the sentence was imposed in violation of the Constitution or laws of the United States, or (b) the Court was without jurisdiction to impose such sentence, or (c) the sentence was in excess of the maximum authorized by law, or (d) the sentence is otherwise subject to collateral attack, and Miller has not otherwise "made a substantial

showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); <u>Hohn v. United States</u>, 524 U.S. 236, 240 (1998), a Certificate of Appealability must be DENIED.

## V. CONCLUSION

For the foregoing reasons, Miller's motion pursuant to § 2255 is DENIED. In light of this disposition, there is no need for discovery and, thus, Miller's motion for discovery also is DENIED. A Certificate of Appealability is DENIED.

**IT IS SO ORDERED**

*[signature]*
Hon. Thomas J. McAvoy
United States District Judge

Dated: August 15, 2003